IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 06-3070

**United States,**
*Appellee*,

vs.

**Bryan A. Burwell,**
*Appellant*.

On Appeal from the
**U.S. District Court for the District of Columbia**
**04-Cr.-355-05**

# Petition for Rehearing and Suggestion of Rehearing *en Banc*

Robert S Becker
*Counsel of Record*
5505 Connecticut Avenue,
N.W.
No. 155
Washington, D.C. 20015
(202) 364-8013
*Attorney for Appellant*
*(Appointed by the Court)*

Filed: June 13, 2011

## CONCISE STATEMENT OF ISSUES FOR *EN BANC* REVIEW AND THEIR IMPORTANCE

### THIS COURT'S HOLDING THAT 18 U.S.C. § 924(C)(1)(B) IS A STRICT LIABILITY CRIME HAS, AT LEAST IMPLICITLY, BEEN OVERRULED

Relying on *United States v. Harris*, 959 F.2$^d$ 246, 257 – 59 (D.C. Cir. 1992), the Panel rejected Burwell's challenge to his conviction and 30-year consecutive sentence for possession of a machinegun in the Industrial Bank robbery. *United States v. Burwell*, 2011 U.S. App. LEXIS 8683, 16 - 17 (D.C. Cir. April 29, 2011). Reiterating *Harris's* holding that

> Because § 924(c) applies only to those individuals involved in the commission of violent crimes or drug trafficking … the government need only show "the defendant … intentionally used firearms in the commission of [that crime]" to obtain a conviction under § 924(c).

Id. at 17. It rejected Burwell's argument that the Supreme Court's holdings in *Staples v. United States*, 511 U.S. 600 (1994), and *United States v. O'Brien*, 130 S. Ct. 2169 (2010), effectively overturned the portion of *Harris* stating that § 924(c)(1)(B)(ii) is a strict liability crime, and said "(i)n the absence of an affirmative statement of the Court, we [must] adhere to our precedent in holding that conviction under § 924(c) does not require proof the defendant knew the weapon was a machine gun." *Burwell, supra*, at 20.

The Panel correctly noted that the Supreme Court "expressly refrained from deciding whether 'a defendant who uses, carries, or possesses a firearm must be aware of the weapon's characteristics.' " *Id*. But before the case reached the High Court the First Circuit so held,[1] and the High Court did not disagree. Concluding that the 1998 amendments to § 924(c) did not abrogate *Castillo v. United States*, 530 U.S. 120 (2000), the First Circuit said the restructuring did not make it "less

---

[1] *United States v. Rivera-Rivera*, 555 F.3$^d$ 277, 291 n. 14 (1st Cir. 2006).

feasible to ask the jury to determine the nature of the weapon or defendant's knowledge of it." *United States v. O'Brien*, 542 F.3$^d$ 921, 925 (1st Cir. 2008).

The *Harris* Court recognized that *mens rea* is presumed to be an essential element of every crime "unless Congress manifests a contrary intention." *Id.* at 258 (citing *United States v. Nofziger*, 878 F.2$^d$ 442, 452 (D.C. Cir.), *cert. denied*, 493 U.S. 1003 (1989)). It added that when a statute is ambiguous the rule of lenity mandates that it be construed to require the government to prove *mens rea*.

According to the Panel, "(t)his presumption applies with the most force to 'statutory elements that criminalize otherwise innocent conduct.' " *Burwell, supra* (citing *United States v. X-Citement Video, Inc*., 513 U.S. 64, 72 (1994)). The Court in *X-Citement Video* said the presumption applies to regulatory statutes like 26 U.S.C. § 5861(d). But it did not limit application to regulatory statutes or grant lower courts permission to disregard the presumption when interpreting ambiguous criminal statutes, including § 924(c), that define distinct crimes which, in conjunction with another offense, impose very lengthy consecutive prison terms.

In the Panel's view, the government need not prove a defendant knew the weapon was a machinegun because "§ 924(c) does not pose any danger of ensnaring 'an altar boy [who made] an innocent mistake.' " *Burwell, supra*, at 21 (quoting *Harris, supra*, at 259). Rather, the government need only prove the defendant engaged in a violent crime and intentionally used a firearm to carry out the crime. *Burwell, supra*, at 17. In its view, the scienter requirement protects the "innocent" but not the less culpable.

Based on the legislative history of the 1968 Gun Control Act, this Court noted that § 924(c) was intended to persuade individuals who commit federal crimes to leave their guns at home. *United States v. Anderson*, 59 F.3$^d$ 1323, 1327 (D.C. Cir. 1995). "That formulation of the statute's purpose — to penalize the choice of using or carrying a gun *in committing a crime* — seems to us to imply

that § 924(c)(1) punishes one and only one crucial decision….” *Id.* at 1328 (emphasis in original).

In 1986, recognizing the greater danger posed by automatic firearms, Congress outlawed machinegun possession, imposing a 10-year mandatory-minimum penalty for violation. 18 U.S.C. § 922(o), P.L. 99-308, § 102(9). It placed another choice in the form of § 924(c)(1)(B) before individuals who commit federal crimes: whether to use an automatic weapon. P.L. 99-308, § 104(a)(2)(C) and (D). That penalty now is a mandatory, consecutive 30-year term, six times the sentence for using most other firearms.

This Court’s holding in *Anderson* and the sentencing scheme enacted as part of the Firearms Owners’ Protection Act of 1986 recognize that individuals who commit crimes often make choices about the crimes they are willing to commit, or the manner in which they commit them, based on the penalties for conviction. A bank robber willing to risk a five-year mandatory sentence for carrying a gun might rationally rule out using a machinegun to avoid the 30-year mandatory, consecutive sentence.

Applying the Supreme Court’s analysis in *Staples* and *O’Brien*, if Congress intended that knowing use of a firearm, that happened to be a machinegun would trigger the consecutive 30-year mandatory sentence it could have included that penalty as a sentencing factor within § 924(c)(1)(A). A judge is no less capable of determining that a weapon is a machinegun than s/he is of ruling that the defendant brandished or discharged the weapon.

By making weapon characteristics that trigger distinct 10- and 30-year sentences an offense element and placing them in a different subsection of the Firearms Owners’ Protection Act, Congress signaled that more is required than a mere jury determination of those characteristics. Just as § 924(c)(1)(A) requires

knowing possession, use or carrying of a firearm, § 924(c)(1)(B) requires knowing possession of a machinegun or short-barreled firearm.[2]

According to firearms experts' testimony in this case, no markings on the AK-47 and AR-15 rifles indicated they were capable of automatic firing. Chtaini, Morrow and Holmes acquired the automatic rifles at least two months before Burwell joined the conspiracy, and the government produced no evidence that he knew the weapons were machineguns. Therefore, his 30-year consecutive sentence must be reduced to five years.

### THE PANEL'S HOLDING CONFLICTS WITH PRECEDENT IN OTHER CIRCUITS REGARDING ADMISSIBILITY OF OTHER CRIMES EVIDENCE

This case presents an issue of exceptional importance because the Court's test for admissibility of other crimes evidence conflicts with holdings in other circuits, resulting in gratuitous admission of irrelevant, highly prejudicial evidence. Relying on the oft-repeated maxims that Fed. R. Evid. 404(b) is "inclusive," and that the government may present its case as it sees fit, the Panel affirmed admission of cooperators' detailed testimony about numerous uncharged crimes to prove association among codefendants, even though the government had more than

---

[2] Under § 924(c)(1)(B)(i), knowledge may be inferred from the weapon's length, but under § 924(c)(1)(B)(ii), knowledge often cannot be inferred from the gun's appearance. In *Dean v. United States*, 129 S. Ct. 1849, 1855 – 6 (2009), the Court said a defendant can receive an enhanced sentenced under § 924(c)(1)(A)(iii), even if a weapon discharges accidentally, because "[a]n individual who brings a loaded weapon to commit a crime runs [a foreseeable] risk…" Because machineguns have been banned since 1986, and because a semi-automatic rifle may have become capable of automatic firing due to non-obvious modification or wear, a defendant who is not the gun's owner should not be held strictly liable for the characteristics of a weapon he or a codefendant possessed during a violent crime. That a machinegun may be in play is not so foreseeable that a defendant can be considered to have assumed the risk.

ample non-prejudicial evidence of their long-standing friendships.

      Unlike this Circuit, the Fourth, Fifth, Seventh, Tenth and Eleventh Circuits require trial judges considering admission of other crimes evidence to determine whether, in light of other less prejudicial evidence, uncharged crimes testimony is needed to prove a substantial issue of material fact. This inquiry under Rule 404(b) is distinct from the inquiry under Fed. R. Evid. 403 into whether the prejudicial effect of such evidence substantially outweighs its probative value. *See, e.g., United States v. Lighty*, 616 F.3[d] 321, 354 n. 39 (4th Cir. 2010). See below at 3 – 10.

# TABLE OF CONTENTS

**CONCISE STATEMENT OF ISSUES FOR *EN BANC* REVIEW AND THEIR IMPORTANCE** ............................................................. ii

   THIS COURT'S HOLDING THAT 18 U.S.C. § 924(C)(1)(B) IS A STRICT LIABILITY CRIME HAS, AT LEAST IMPLICITLY, BEEN OVERRULED ...................... ii

   THE PANEL'S HOLDING CONFLICTS WITH PRECEDENT IN OTHER CIRCUITS REGARDING ADMISSIBILITY OF OTHER CRIMES EVIDENCE ................... v

**TABLE OF AUTHORITIES** .............................................................. viii

**STATEMENT OF THE CASE** ..............................................................1

**STATEMENT OF FACTS** ..................................................................2

**REASONS FOR GRANTING THIS PETITION** ...............................3

   THE PANEL FAILED TO CONSIDER SEVERAL FACTORS IN RULING THAT THE OTHER CRIMES EVIDENCE WAS ADMISSIBLE .................................3

      *The other crimes evidence was not relevant to proof of the charged offenses* ..............................................................................................4

      *The other crimes evidence was far more prejudicial than probative of any relevant facts* ...................................................................8

**CONCLUSION** ...............................................................................10

**ADDENDUM**

   *United States v. Burwell, et al.*, 2011 U.S. App. LEXIS 8683 (D.C. Cir. April 29, 2011

# TABLE OF AUTHORITIES[‡]

## CASES

*Boyle v. United States*, 129 S. Ct. 2237 (2009) --------------------------------------- 5

*Castillo v. United States*, 530 U.S. 120 (2000)----------------------------------------- ii

*Dean v. United States*, 129 S. Ct. 1849 (2009) ---------------------------------------- v

*Old Chief v. United States*, 519 U.S. 172 (1997)----------------------------------6, 10

*Salinas v. United States*, 522 U.S. 52 (1997) ---------------------------------------- 5

*Staples v. United States*, 511 U.S. 600 (1994) ------------------------------------- ii, iv

*United States v. Al-Moayad*, 545 F.3$^d$ 139 (2$^d$ Cir. 2008) ---------------------------- 6

*United States v. Anderson*, 59 F.3$^d$ 1323 (D.C. Cir. 1995)------------------------ iii, iv

*United States v. Brown*, 597 F.3$^d$ 399 (D.C. Cir. 2010) ------------------------------10

*United States v. Burwell*, 2011 U.S. App. LEXIS 8683 (D.C. Cir. April 29, 2011) ------------------------------------------------------- ii, iii, 4, 8

*United States v. Byers*, 2011 U.S. App. LEXIS 9309 (4th Cir. May 6, 2011)-------- 7

*United States v. Chaimson*, 670 F.2$^d$ 798 (7th Cir. 1985) ---------------------------- 7

*United States v. Green*, 617 F.3$^d$ 233 (3$^d$ Cir. 2010) ------------------------------- 5

*United States v. Harris*, 959 F.2$^d$ 246 (D.C. Cir. 1992) ---------------------------- ii, iii

*United States v. Lehder-Rivas*, 955 F.2$^d$ 1510 (11th Cir. 1992) --------------------- 5

*United States v. Lighty*, 616 F.3$^d$ 321 (4th Cir. 2010)---------------------------- vi, 7

*United States v. Morrow*, No. 04-Cr.-355, 2005 U.S. Dist. LEXIS 23512 (D.D.C. Apr. 7, 2005)---------------------------------------------------------- 1, 9

*United States v. Neapolitan*, 791 F.2$^d$ 489 (7th Cir. 1986)---------------------------- 5

*United States v. Nofziger*, 878 F.2$^d$ 442 (D.C. Cir.), *cert. denied*, 493 U.S. 1003 (1989) ----------------------------------------------------------------- iii

*United States v. O'Brien*, 130 S. Ct. 2169 (2010) -------------------------------- ii, iv

*United States v. O'Brien*, 542 F.3$^d$ 921, 925 (1st Cir. 2008)------------------------ iii

*United States v. Paladino*, 401 F.3$^d$ 471 (7th Cir. 2005)------------------------------ 7

---

[†] Citations to precedent principally relied upon are preceded by asterisks (*).

*United States v. Perholtz*, 842 F.2ᵈ 343 (D.C. Cir. 1988) ------------------------------ 5

*\*United States v. Rice*, 550 F.2ᵈ 1364 (5ᵗʰ Cir. 1977)---------------------------------- 7

*\*United States v. Rivera*, 837 F.2ᵈ 906 (10ᵗʰ Cir. 1988) ------------------------------- 7

*United States v. Rivera-Rivera*, 555 F.3ᵈ 277 (1ˢᵗ Cir. 2006) ------------------------- ii

*United States v. Williams (Edward)*, 81 F.3ᵈ 1434 (7ᵗʰ Cir. 1996) ------------------ 10

*United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994)------------------------- iii

*\*United States v. Yusufu*, 63 F.3ᵈ 505 (7ᵗʰ Cir. 1995)---------------------------------- 6

## STATUTES

18 U.S.C. §  2 ------------------------------------------------------------------------ 1

18 U.S.C. §  371 ------------------------------------------------------------------ 1, 4

18 U.S.C. §  922 ----------------------------------------------------------------- iv

18 U.S.C. §  924 -----------------------------------------------ii, iii, iv, v, 1, 10

18 U.S.C. § 1962 ----------------------------------------------------------------- 1, 4

18 U.S.C. § 2113 -------------------------------------------------------------------- 1

26 U.S.C. § 5861 ------------------------------------------------------------------- iii

P.L. 99-308, 100 Stat. 456 (Oct. 27, 1986)------------------------------------------- iv

## RULES & REGULATIONS

Fed. R. Evid. 401 ----------------------------------------------------------- 4, 5, 8

Fed. R. Evid. 403 ----------------------------------------------------------- vi, 7, 9

Fed. R. Evid. 404 ------------------------------------------------v, vi, 1, 4, 5, 7, 9

## OTHER AUTHORITIES

Norman Kirivosha, Thomas Lansworth, Pennie Pirsch, *Relevancy: the Necessary Element in Using Evidence of Other Crimes, Wrongs, or Bad Acts to Convict*, 60 Neb. L. Rev. 657 (1981) ------------------------------- 4

## TREATISES

22 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE § 5220 (1ˢᵗ Ed. 1978)------------------------------------------------ 10

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**UNITED STATES,**

           **APPELLEE,**

vs.

**BRYAN A. BURWELL,**

           **APPELLANT.**

No. 06-3070
   (04-Cr.-355-05)

## STATEMENT OF THE CASE

An indictment returned August 3, 2004 charged Bryan Burwell and six codefendants with conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (Count 1). It charged the defendants in various combinations with four armed bank robberies in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2 (Counts 2 – 5).

The government filed a superseding indictment February 15, 2005, charging each defendant with RICO conspiracy (Count 1), 18 U.S.C. § 1962(d), including as racketeering acts four armed bank robberies in Washington and two in Maryland; numerous firearms charges associated with the bank robberies; and conspiracy to commit armed bank robbery (Count 2). It charged Burwell with one count of armed bank robbery (Count 10) and one count of using or carrying a machinegun during a violent crime in violation of § 924(c)(1)(B)(ii) (Count 11).

The government noted its intent to introduce other crimes evidence under Fed. R. Evid. 404(b), which Appellants opposed. In a 30-page memorandum opinion the Trial Court ruled April 7, 2005 that the government could introduce such evidence, some of it as evidence intrinsic to the charged crimes and some under Rule 404(b) as other crimes or bad acts evidence. *United States v. Morrow*, No. 04-Cr.-355, 2005 U.S. Dist. LEXIS 23512 (D.D.C. Apr. 7, 2005).

The jury convicted Burwell July 15, 2005 of conspiracy to commit armed bank robbery,  RICO conspiracy, armed robbery of the Industrial Bank, and using or carrying a machinegun during a violent crime.

The Trial Court sentenced Burwell April 28, 2006 to concurrent prison terms of 135 months each for RICO conspiracy and armed bank robbery, 60 months for conspiracy to commit armed bank robbery, and a consecutive term of 360 months for using or carrying a machinegun in the robbery. It imposed concurrent terms of supervised release totaling five years and special assessments totaling $400. Burwell, along with his five codefendants and two cooperators who pleaded guilty, are jointly and severally liable for restitution totaling $361,000.

Appellant filed a timely Notice of Appeal May 3, 2006, and the Court consolidated his appeal with those of his five codefendants. A Panel of this Court affirmed all Appellants' convictions and sentences in an opinion issued April 29, 2011. *Burwell, supra. See Addendum*.

## STATEMENT OF FACTS

Burwell and his codefendants were tried for bank robberies January 22, 2004 at the Bank of America, 5911 Blair Road, N.W.; March 5, 2004 at the Riggs Bank, 7601 Georgia Avenue, N.W.; May 10, 2004 at the Chevy Chase Bank, 3601 St. Barnabas Road, Silver Hill, Maryland; May 27, 2004 at the Chevy Chase Bank, 5823 Eastern Avenue, Chillum, Maryland; June 12, 2004 at the Industrial Bank, 2012 Rhode Island Avenue, N.E.; and June 29, 2004 at the SunTrust Bank, 5000 Connecticut Avenue, N.W. Cooperator Noureddine Chtaini testified that Burwell participated in the May 27 and June 12 robberies only.

On July 11, 2004, after a high speed chase involving a helicopter and several law enforcement agencies that began in Columbia Heights, included a carjacking along I-95 and break-ins to two apartments in Alexandria, Virginia, Alexandria

**United States v. Bryan A. Burwell, No. 06-3070 — Page  2**

police arrested Noureddine Chtaini. Tr. 5/4/05PM, 3424 – 32. Over the next several days Chtaini negotiated a plea agreement encompassing the six bank robberies in this case and charges arising from the chase, in the process identifying Burwell and his codefendants.

In the government's case-in-chief bank employees and customers did not identify any of the Appellants as the robbers. Prosecutors introduced numerous photos and videotapes taken by bank security cameras and a television cameraman showing the robbers wearing bulky clothing and masks to disguise themselves. Using the photos and videotapes, Chtaini identified Burwell and his codefendants as the robbers. He claimed that he could identify them by the clothes each wore and because he recalled which weapon each carried during specific robberies.

After Chtaini's arrest, Holmes testified, he saw a news story about the arrests of some of the appellants, and with his father's assistance he fled by car to Laredo, Texas, where he was arrested August 10, 2004, before he could cross the border into Mexico. Tr. 5/23/05PM, 5484 – 6. Having pleaded guilty to involvement in one bank robbery and conspiracy, avoiding a conviction for racketeering and for his substantial role in procuring automatic weapons allegedly used in several of the robberies, Holmes became a cooperator. Tr. 5/23/05AM, 5184; Tr. 5/23/05PM, 5479 – 84.

Holmes implicated appellants in carjackings in Washington and Silver Spring, robberies of drug dealers, and involvement in the bank robberies.

## REASONS FOR GRANTING THIS PETITION

### THE PANEL FAILED TO CONSIDER SEVERAL FACTORS IN RULING THAT THE OTHER CRIMES EVIDENCE WAS ADMISSIBLE

The Panel agreed with Burwell and his co-appellants that the Trial Court erred by admitting numerous uncharged crimes to prove *modus operandi* and

**United States v. Bryan A. Burwell, No. 06-3070 — Page 3**

identity. *Burwell, supra*, at 7 – 9. The Court acknowledged, as well, that association is not an essential element of RICO conspiracy under § 1962(d) or conspiracy under § 371; and that Appellants offered to stipulate to the their lengthy personal relationships. *Burwell, supra*, at 10.

Nonetheless, it said that "[b]ecause evidence of the three carjackings, the stolen cars, the use of false names, and the marijuana cultivation and distribution was relevant to prove Appellants' association, we see no error in admitting this evidence under Rule 404(b)." *Id.* at 11.

### *The other crimes evidence was not relevant to proof of the charged offenses*

The first step in determining whether other crimes evidence is admissible is to determine whether the other crimes satisfy the requirements of Rule 401.

> If we are to assure ourselves and the participants in the American criminal justice system that what we say about the presumption of innocence and the right to a fair trial is indeed the truth, a careful, analytical examination of relevancy must be exercised by the trial judge before evidence of other bad acts may be admitted. Without such an approach, there is a hollow ring to our frequent declarations that ours is not a criminal trial process in which defendants are convicted merely because they are "bad" people.

Norman Kirivosha, Thomas Lansworth, Pennie Pirsch, *Relevancy: the Necessary Element in Using Evidence of Other Crimes, Wrongs, or Bad Acts to Convict*, 60 Neb. L. Rev. 657, 670 (1981).

Under Rule 401 evidence is relevant because it bears on particular facts, not because it relates to the defendants generally.

To win a conviction for RICO conspiracy the government had to prove an agreement, the existence of a RICO enterprise made up of a continuing core of personnel motivated by a common interest, and that the enterprise engaged in a pattern of racketeering activity. *See, e.g., Salinas v. United States*, 522 U.S. 52, 65

**United States v. Bryan A. Burwell, No. 06-3070 — Page 4**

(1997); *United States v. Perholtz*, 842 F.2$^d$ 343, 355 (D.C. Cir. 1988); *United States v. Neapolitan*, 791 F.2$^d$ 489, 499 (7th Cir. 1986).

    An association-in-fact enterprise has "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009). The term "purpose" means a "venture, undertaking, or project." *Id.* (internal quotations omitted). Association "requires both interpersonal relationships and a common interest," a "collection of persons who have joined together for a certain object." *Id.* The Court rejected the argument that an association-in-fact enterprise must have structural attributes such as "hierarchy, role differentiation, a unique *modus operandi*, … diversity and complexity of crimes, … [or] uncharged or additional crimes aside from predicate acts…." *Id.* at 2245 (internal quotations omitted).

    *United States v. Green*, 617 F.3$^d$ 233, , 239 - 49 (3$^d$ Cir. 2010), cogently analyzes the history and development of the legal principles governing admissibility of uncharged crimes. Its main premise is that by incanting phrases such as "Rule 404(b) is inclusive," and categorizing evidence broadly as extrinsic, intrinsic or inextricably intertwined, judges often fail to critically examine whether particular evidence is admissible under Rule 401.

    Even in a conspiracy case, other crimes evidence must "pertain[] to the chain of events explaining the context, motive and set-up of the crime" and is "linked in time and circumstances with the charged crime"; "forms an integral and natural part of the account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Lehder-Rivas*, 955 F.2$^d$ 1510, 1515 – 6 (11th Cir. 1992). In that case, the "carefully circumscribed evidence" showed how the two leaders of the conspiracy met in prison, planned to import cocaine, and brought others into the conspiracy. *Id.* at 1516. "The  roles and motives of the various co-

**United States v. Bryan A. Burwell, No. 06-3070 — Page  5**

conspirators in Lehder's distribution network … would have been incomprehensible to the jurors had the prosecutor failed to trace formation of the conspiracy to its origin with Lehder and Jung." *Id.*

Other crimes evidence may be introduced in a conspiracy case to "fill a chronological or conceptual void" in the evidence. *United States v. Yusufu*, 63 F.3$^d$ 505, 511 (7th Cir. 1995). In that case the Court admitted evidence that while incarcerated in an unrelated case Appellant filed a hand-written motion. Investigators used the motion to match his handwriting to an investment fund application and altered money orders supporting the charged crimes. "[I]f the jury had not heard that Strong Funds sent the account application to Yusufu in 1990 and that the application was not used until 1993, and then only by someone purporting to be David Barbarini, it would be more likely to conclude that someone other than Yusufu had taken possession of it and submitted it." *Id.*

The Second Circuit explained,

> *Old Chief*[3] emphasizes the importance of allowing the prosecution to maintain "the natural sequence of narrative evidence" in presenting its case, to ameliorate the concern that "[p]eople who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters."

*United States v. Al-Moayad*, 545 F.3$^d$ 139, 161 (2$^d$ Cir. 2008). The other crimes evidence was inadmissible because it "was almost entirely unrelated to the elements of the charges — and, therefore, [unrelated to] the government's 'narrative evidence'…, especially considering that the defendants never denied" the fact the evidence was offered to prove. *Id.*

According to the Fourth Circuit,

courts must determine whether prior <mark>bad acts</mark> evidence is necessary … in

---

[3] *Old Chief v. United States*, 519 U.S. 172 (1997).

**United States v. Bryan A. Burwell, No. 06-3070 — Page 6**

light of other evidence available to the government…. Thus, as the quantum of other non-Rule 404(b) evidence available to prove an issue unrelated to character increases, the need for the Rule 404(b) evidence decreases.

*United States v. Byers*, 2011 U.S. App. LEXIS 9309, 26 – 27 (4th Cir. May 6, 2011)(citations, internal quotations omitted).

The necessity prong … is similar to the Rule 403 prong,… There is, however, an important distinction between the two prongs. The necessity prong looks solely at the government's need to introduce Rule 404(b) evidence, irrespective of the prejudicial effect of the evidence.

*Lighty, supra*, 616 F.3[d] at 354 n. 39. *See, also, United States v. Rivera*, 837 F.2[d] 906, 912 (10th Cir. 1988)("the element of the prior crime for which there is a recognized exception to the general rule … must be a material issue in the instant case; [and there] must be a substantial need for the probative value of the evidence provided for by the prior crimes"); *United States v. Rice*, 550 F.2[d] 1364, 1372 (5th Cir. 1977)(same); *United States v. Chaimson*, 670 F.2[d] 798, 813 (7th Cir. 1985)(Cudahy, J. concurring)("evidence of other crimes proves that the defendant is a criminal, and for that reason it cannot be used unless there is preponderant need to use it to prove some other, legitimate point").

In this case Appellants did not deny their long-standing relationships with each other, Chtaini and Holmes. Chtaini and Holmes testified to numerous non-criminal events proving long-time association. Furthermore, the fact that some of them committed carjackings, stole cars for personal use or profit, and distributed drugs together did not make any fact of consequence to proof of the conspiracy counts, the bank robberies or the assaults more likely than not.

In the case at bar, as in *United States v. Paladino*, 401 F.3[d] 471, 475 (7th Cir. 2005), if jurors had never heard that Appellants in various combinations distributed marijuana together or that they obtained cars for personal use and re-VINing by committing armed carjackings "it would not have occurred to them that they were

**United States v. Bryan A. Burwell, No. 06-3070 — Page 7**

missing anything" and they would not have found "any of the other evidence in the case unintelligible."

Therefore, even though this case included a RICO conspiracy charge, the uncharged crimes did not satisfy Rule 401's relevancy requirement. Nor was it admissible because it was inextricably intertwined with evidence of the charged crimes — it was not. Despite the Trial Court's limiting instruction, the evidence invited jurors to conclude that because Burwell was present during a carjacking and sold drugs with codefendants he must have agreed to rob banks with them.

### *The other crimes evidence was far more prejudicial than probative of any relevant facts*

In a single sentence the Panel dismissed Appellants' argument that, even if admissible, the uncharged crimes should have been excluded under Fed. R. Evid. 403 because they were more prejudicial than probative.

> [C]onsidering the nature of the evidence against Appellants (for example, the bank surveillance video of Appellants brandishing automatic weapons and pointing them at customers), the probative value of most of this evidence is not substantially outweighed by the evidence's potential for prejudice

*Burwell, supra*, at 11. The Panel expressed concern about admission of only one of the armed carjackings, in which Chtaini, Morrow and Holmes allegedly stole a car from a grandfather who had his young grandchildren with him. It cited

> bank surveillance photos (one of which showed an Appellant pointing an automatic weapon at a boy and most of them showing Appellants brandishing automatic assault rifles), the firing of shots to intimidate bank employees, and the attempted killing of a police officer,

*Id.* at 13 – 14 n. 6, and concluded that "[t]he prejudice resulting from the carjacking evidence is slight when compared to the evidence of the violent acts for which Appellants were indicted." *Id.* at 13.

The Panel failed to consider that Burwell did not point a gun at anyone, did

**United States v. Bryan A. Burwell, No. 06-3070 — Page 8**

not fire shots to intimidate bank employees, and was not a member of the conspiracy when shots were fired at the police officer, although Chtaini claimed he struck a bank employee.

There is no dispute that the government presented copious evidence from bank surveillance cameras, bank employees and customers. The Panel did not consider that none of the civilian witnesses could identify Burwell as one of the bank robbers. For that the government relied almost exclusively on Chtaini testimony, Chtaini was the only witness. It also failed to consider that jurors were told they could consider the Georgia Avenue carjacking, even though the Trial Court said Burwell was present, but specifically ruled that he did not participate in the uncharged crime.

Furthermore, despite the volume of evidence, this was a close case. Before reaching a verdict, jurors deliberated 14 days, during which they asked three times for re-instruction on issues and 18 times to re-examine trial exhibits. The Panel did not consider that in a close case other crimes evidence, though deemed less egregious than the charged crimes, could tip the scales of justice in the government's favor.

Regarding the Georgia Avenue carjacking the Trial Court said the testimony was not prejudicial because Chtaini and Holmes "are alleged criminals who participated in numerous car-jackings and acts of violence, and defense counsel is free to impeach them," and because their testimony "is actually much more prejudicial and incriminating to them than most of the other defendants." *United States v. Morrow*, at 56. Neither the Trial Court nor the government cited precedent supporting that rationale for admitting other crimes evidence, and the Panel did not adopt that reasoning.

The Supreme Court strongly disagreed with the proposition that because Rule 404(b) is "inclusive," judges should avoid invoking Rule 403 to exclude

**United States v. Bryan A. Burwell, No. 06-3070 — Page 9**

highly prejudicial other crimes evidence, even though there is ample non-prejudicial evidence tending to prove the same fact. It held that such an interpretation would allow the government to

> choose the available alternative carrying the greatest threat of improper influence, despite the availability of less prejudicial but equally probative evidence.… It would be very odd for the law of evidence to recognize the danger of unfair prejudice only to confer such a degree of autonomy on the party subject to temptation, and the Rules of Evidence are not so odd.

*Old Chief, supra*, 519 U.S. at 183 – 4. *See, also, United States v. Brown*, 597 F.3<sup>d</sup> 399, 406 – 7 (D.C. Cir. 2010)(quoting 22 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE § 5220, p. 306 (1st Ed. 1978); *United States v. Williams (Edward)*, 81 F.3<sup>d</sup> 1434, 1443 (7th Cir. 1996)).

## <u>CONCLUSION</u>

For the reasons stated above and any others that may appear to the Court, Appellant respectfully request that the Court grant this Petition, vacate his conviction and remand his case to the District Court with for a new trial. Alternatively, he requests that the Court vacate his conviction and 30-year sentence under § 924(c)(1)(B)(ii) and order that he be resentenced him to five years under § 924(c)(1)(A).

Respectfully submitted,

_____
Robert S Becker, Esq.
D.C. Bar No. 370482
PMB # 155
5505 Connecticut Avenue, N.W.
Washington, D.C. 20015
(202) 364-8013
Attorney for Bryan A. Burwell
(*Appointed by the Court*)

**United States v. Bryan A. Burwell, No. 06-3070 — Page  10**

## <u>CERTIFICATE OF SERVICE</u>

I, Robert S. Becker, counsel for Bryan A. Burwell, certify on June 13, 2011 that the person(s) listed below are registered users of the Court's CM/ECF system and will receive service electronically.

_____

Robert S. Becker

Roy McLeese
Office of the U.S. Attorney
555 Fourth Street, N.W.
Washington, D.C. 20001

William Francis Xavier Becker
PNC Bank Building – 2$^d$ Floor
260 East Jefferson Street
Rockville, Maryland 20850
(301) 340-6966
Attorney for Aaron Perkins
(*Appointed by the Court*)

Allen H. Orenberg
The Orenberg Law Firm, P.C.
11200 Rockville Pike – Suite 300
North Bethesda, Maryland 20852
(301) 984-8005
Attorney for Malvin Palmer
(*Appointed by the Court*)

Mary E. Davis
Davis & Davis
The Lincoln Building
514 10th Street, N.W. – 9th Floor
Washington, D.C. 20004
(202) 234-370
Attorney for Carlos Aguiar
(*Appointed by the Court*)

David B. Smith
English & Smith
526 King Street – Suite 213
Alexandria, Virginia 22314
(703) 548-8911
Attorney for Miquel Morrow
(*Appointed by the Court*)

W. Gregory Spencer
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500
Attorneys for Lionel Stoddard

## A D D E N D U M

UNITED STATES OF AMERICA, APPELLEE v. BRYAN BURWELL, AARON PERKINS, MALVIN PALMER, CARLOS AGUIAR, MIGUEL MORROW, AND LIONEL STODDARD, APPELLANTS

No. 06-3070 Consolidated with 06-3071, 06-3073, 06-3077, 06-3083, 06-3084

UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

2011 U.S. App. LEXIS 8683

February 17, 2011, Argued
April 29, 2011, Decided

**COUNSEL:** Robert S. Becker, appointed by the court, argued the issues Other-Crimes Evidence, Bias Cross-Examination Evidence, and Motion to Sever. William Francis Xavier Becker, appointed by the court, argued the issue of Sufficiency of Machine-Gun Evidence. With them on the briefs were Mary E. Davis, Allen H. Orenberg, and David B. Smith, appointed by the court, A. J. Kramer, Federal Public Defender, and W. Gregory Spencer, Assistant Federal Public Defender.

Stratton C. Strand, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Ronald C. Machen Jr., U.S. Attorney, Roy W. McLeese III, Daniel P. Butler, and Stephanie C. Brenowitz, Assistant U.S. Attorneys.

**JUDGES:** Before: HENDERSON, TATEL and BROWN, Circuit Judges. Opinion for the Court by Circuit Judge BROWN.

**OPINION BY:** BROWN

**OPINION**

BROWN, *Circuit Judge*: The relatively routine legal questions presented by this appeal arise from quite an unusual set of facts. Appellants are modern-day bank robbers whose old-school tactics--more reminiscent of the brashness of John Dillinger than the subtlety of Willie Sutton--included subduing innocent bystanders with **[*2]** gratuitous gunplay, pistol whipping a victim, and peppering a pursuing police car with bullets. When the aftermath of their final robbery was captured on film by a TV station's news camera crew, the robbers were apprehended a few weeks later, convicted by jury of numerous crimes, and sentenced to various terms of imprisonment. They now assert assorted infirmities in both the trial and their sentences. We affirm.

I

Because "brevity is the soul of wit," [1] we offer only an abbreviated version of the essential facts underlying this appeal. The six Appellants, along with co-conspirators-turned-government-witnesses Nourredine Chtaini and Omar Holmes, indulged in a violent crime spree throughout the District of Columbia metro area that lasted for nearly a year and a half. Appellants, who began by cultivating and selling marijuana, evolved into a ring that committed armed bank robberies, using stolen vehicles to travel to the targeted banks and make their escapes. By the summer of 2004, the robbers had developed a signature style. The gang wore bullet-proof vests, masks, and

gloves, and relied on superior fire power, preferring to use military weapons like AK-47s instead of handguns because **[\*3]** they surmised the metropolitan police "wouldn't respond" when Appellants "robb[ed] banks with assault weapons." (Tr: 5/10/05PM at 3950). The gang made use of several stolen vehicles, strategically placed along the get-away-route, for each robbery. The robbers would serially abandon the vehicles, often torching them in an attempt to destroy any forensic evidence that might be left behind.

> 1    WILLIAM    SHAKESPEARE HAMLET act 2, sc. 2.

After their apprehension, a grand jury issued a twenty-count indictment charging Appellants with racketeering conspiracy, armed-bank-robbery conspiracy, [2] four armed bank robberies, two assaults with intent to kill, and various weapons crimes. Following a lengthy trial, a jury convicted each defendant of RICO conspiracy under 18 U.S.C. § 1962(d) and conspiracy to commit armed bank robbery under 18 U.S.C. § 371. Each defendant was also convicted for his individual participation in specific bank robberies and of various firearms offenses. Additionally, Miguel Morrow was convicted of assault with intent to kill while armed pursuant to D.C. Code §§ 22-401, -1805, -4502, but Morrow and Lionel Stoddard were acquitted of a separate assault with intent to kill charge.

> 2    Only    **[\*4]** the racketeering and armed-bank-robbery conspiracies were charged against every Appellant. The other crimes were charged against Appellants in various combinations.

At sentencing, the district court prescribed life imprisonment for Morrow. As for the other defendants, Stoddard received 725 months' imprisonment; Carlos Aguiar, 720 months' imprisonment; Bryan Burwell, 495 months' imprisonment; Aaron Perkins, 417 months'

imprisonment; and Malvin Palmer, 512 months' imprisonment. The court also sentenced each defendant to a term of supervised release and ordered the defendants to pay restitution, jointly and severally. The defendants now appeal, alleging an assortment of errors in both their trial and sentencing proceedings.

## II

Although Appellants raised numerous issues on appeal, only two of those arguments have arguable merit. We limit our discussion accordingly.

### A

During the trial, the government sought and gained admission of a hoard of "other crimes" evidence. The Appellants now argue the admission of this evidence was in error, both because it was offered for an impermissible purpose and because its probative value was substantially outweighed by its prejudicial effect. We disagree.

Federal Rule of Evidence 404(b) **[\*5]** provides: [HN1] "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Nonetheless, [HN2] such evidence is expressly permitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*. We have described Rule 404(b) as "a rule of inclusion rather than exclusion." *United States v. Bowie*, 232 F.3d 923, 929, 344 U.S. App. D.C. 34 (D.C. Cir. 2000). Even if admissible under Rule 404(b), however, that evidence is subject to Rule 403's balancing test: evidence is admissible unless its probative value is substantially outweighed by its prejudicial effect. Fed. R. Evid. 403. [HN3] We review the admission of other crimes evidence for abuse of discretion. *United States v. Douglas*, 482 F.3d 591, 596, 375 U.S. App. D.C. 499 (D.C. Cir. 2007). But "because the trial court is in the best

**United States v. Bryan A. Burwell — Addendum — Page 3**

position to perform the subjective balancing required by Rule 403," we review its Rule 403 rulings "only for grave abuse." *Id.* (quotation marks and alteration omitted).

We must first confront Appellants' argument that before permitting the government to introduce other crimes evidence, the district court **[\*6]** had "to rule preliminarily that the jury could reasonably find . . . by a preponderance of the evidence" that Appellants committed the uncharged acts. Appellants' Opening Br. at 18. Appellants are correct that [HN4] when the government seeks to introduce evidence that a defendant committed another crime, that evidence is only relevant, and hence potentially admissible, if a reasonable jury could find by a preponderance of the evidence that the defendant, and not someone else, was responsible for the crime. *See Huddleston v. United States*, 485 U.S. 681, 690, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988); *see also* Fed. R. Evid. 104(b). Because district courts have broad "discretion in controlling the order of proof at trial," however, they may conditionally admit evidence of other crimes subject to the requirement that the government later introduce sufficient evidence for the jury reasonably to find that the defendant committed those crimes. *Huddleston*, 485 U.S. at 690; *see also* Fed. R. Evid. 104(b) (providing that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact," the court may admit the evidence "subject to[] the introduction of evidence sufficient to support a finding of the fulfillment of **[\*7]** the condition"). We thus reject Appellants' suggestion that the district court abused its discretion by permitting the government to introduce other crimes evidence without reaching a preliminary determination as to whether the government had presented sufficient evidence to support a finding that defendants committed the uncharged acts. Appellants made no objection on conditional relevancy grounds, and thus, the district court's failure to make an explicit sufficiency

determination on its own initiative did not constitute plain error. *See Huddleston*, 485 U.S. at 690 n.7 ("It is, of course, not the responsibility of the judge sua sponte to insure that the foundation evidence is offered . . . ." (internal quotation marks omitted)).

The evidence admitted under Rule 404(b) [3] falls into three broad categories: evidence of Appellants' commission of three carjackings; evidence of Appellants' theft of forty cars; and evidence of Appellants' use of false names, as well as their marijuana cultivation and distribution. The district court admitted the evidence of the carjackings, false names, and marijuana cultivation and distribution for a variety of purposes, including the theory that it demonstrated **[\*8]** Appellants' modus operandi and identities. We agree with Appellants that admission for either of those purposes was improper.

> 3   The district court primarily admitted the evidence under Rule 404(b). But it also relied on the theories of direct evidence and inextricable intertwinement evidence. *United States v. Morrow*, No. CRIM 04355, 2005 U.S. Dist. LEXIS 8328, 2005 WL 3159572 (D.D.C. Apr. 7, 2005). Because we find the evidence was admissible under Rule 404(b), we need not address these other theories of admissibility.

[HN5] Although not listed in Rule 404(b)'s nonexclusive list of proper purposes, modus operandi evidence is normally admitted pursuant to the identity exception. *See United States v. Carr*, 373 F.3d 1350, 1353, 362 U.S. App. D.C. 303 (D.C. Cir. 2004); *United States v. Crowder*, 87 F.3d 1405, 1413, 318 U.S. App. D.C. 396 (D.C. Cir. 1996), *rev'd on other grounds*, 519 U.S. 1087, 117 S. Ct. 760, 136 L. Ed. 2d 708 (1997). But evidence of modus operandi must be unique; "the Government must establish not only that the extrinsic act bears some peculiar or striking similarity to the

charged crimes, but also that it is the defendant's trademark, so unusual and distinctive as to be like a signature." [4] *Crowder*, 87 F.3d at 1413 (quotation marks omitted). The Appellants' use of violence and weapons is, **[\*9]** unfortunately, not so unique to crimes in the District of Columbia that it constitutes appropriate modus operandi evidence.

> 4    Think, for example, of the 1990 Macaulay Culkin movie *Home Alone* in which the "Wet Bandits" left the faucets running in each house they burgled. Home Alone (20th Century Fox 1990).

Nor was their use of guns and violence so distinctive that it demonstrated Appellants' identity. [HN6] To be relevant to identity, the other crimes must share similar characteristics with the charged acts. *United States v. Lawson*, 410 F.3d 735, 741, 366 U.S. App. D.C. 228 (D.C. Cir. 2005) (admitting other crimes evidence to prove identity in a charged robbery when, during both the charged and uncharged robberies, there were two robbers--one tall and one short, the tall robber wielded a distinctive gun, the short robber collected the money, and the tall robber wore the same clothing). As with modus operandi, the naked use of violence and weapons, without more, does not rise to the level of similarity necessary to make the other crimes evidence relevant to identity.

But [HN7] just because evidence is inadmissible for one purpose does not mean it is inadmissible for another. *See, e.g.*, Fed. R. Evid. 404(b) (explaining that **[\*10]** evidence of other acts is inadmissible for propensity purposes, but admissible for other purposes). The Appellants were charged with violating [HN8] 18 U.S.C. § 1962(d), which prohibits, among other things, conspiracies to conduct the affairs of an "enterprise" through a pattern of racketeering activity. An "enterprise" includes "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Even if the government is not

*required* to prove the existence of an association under § 1962(d), *cf. Salinas v. United States*, 522 U.S. 52, 65, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997); *United States v. Hoyle*, 122 F.3d 48, 50, 326 U.S. App. D.C. 310 (D.C. Cir. 1997) (explaining a RICO conspiracy "requires proof that the defendant agreed to further a substantive RICO violation"), it certainly is entitled to do so, *see United States v. Mathis*, 216 F.3d 18, 26, 342 U.S. App. D.C. 127 (D.C. Cir. 2000) (allowing the prosecution "considerable leeway" in proving its conspiracy case through evidence of other offenses). The Appellants' offer to stipulate to their association has no bearing on the government's entitlement to prove its case; rather, it is only one factor the court considers in conducting its Rule 403 analysis. *See United States v. Crowder*, 141 F.3d 1202, 1209, 329 U.S. App. D.C. 418 (D.C. Cir. 1998) **[\*11]** (en banc). Because evidence of the three carjackings, the stolen cars, the use of false names, and the marijuana cultivation and distribution was relevant to prove Appellants' association, we see no error in admitting this evidence under Rule 404(b). [5] Moreover, considering the nature of the evidence against Appellants (for example, the bank surveillance video of Appellants brandishing automatic weapons and pointing them at customers), the probative value of most of this evidence is not substantially outweighed by the evidence's potential for prejudice. *Cf. United States v. Mahdi*, 598 F.3d 883, 892, 389 U.S. App. D.C. 374 (D.C. Cir. 2010) (upholding Rule 403 analysis where other crimes evidence of an assault with a knife and a stabbing "paled alongside the extreme violence of the acts of which [the defendant] was indicted and convicted").

> 5    We note that the third carjacking, "the Southern Comfort" carjacking, was properly admitted as direct evidence of the charged RICO conspiracy, so the alternative theory of admission under

**United States v. Bryan A. Burwell — Addendum — Page 5**

Rule 404(b) was unnecessary, but sufficient.

The one piece of evidence that gives us pause is the admission of the "Silver Spring" carjacking. This carjacking incident involved Appellant **[*12]** Morrow, and co-conspirators Chtaini and Holmes. In November 2003, while driving around near Silver Spring, the trio decided to steal a Mercedes S5 because Morrow's brother and chop-shop owner, Romell Morrow, had informed them he would pay top dollar for a car of that model. The men encountered one S5, but chivalrously decided against stealing it because it contained a female passenger. When they encountered a second S5, this one being driven by a man, they decided to follow it. The car reached a back road in Silver Spring, at which point Chtaini, who was driving, lightly struck the car's bumper so the driver would pull over. The three men exited their car wearing masks and carrying guns. They subdued the driver and jumped into the S5, only to find the driver's two grandchildren in the backseat. The men removed the five-year-old boy and two-year-old girl from the S5 "in a gentle way," and then drove away leaving their old car behind. (Tr. 5/23/05AM at 5223).

In determining this evidence was admissible under Rule 403, the district court's explanation is somewhat terse. In fact, it does not even mention explicitly the possible prejudice arising from the sympathetic nature of the victims. **[*13]** *Morrow*, 2005 U.S. Dist. LEXIS 8328, 2005 WL 3159572, at *18. Arguably, the fact that Morrow forcibly stole a car from a grandfather and his two young grandchildren could have struck the jurors as particularly egregious. The district court should have considered this in its Rule 403 analysis. Nonetheless, we do not think the district court's Rule 403 conclusion amounted to grave error. The prejudice resulting from the carjacking evidence is slight when compared to the evidence of the violent acts for which

Appellants were indicted. [6] *Cf. Mahdi*, 598 F.3d at 892. Moreover, the district court gave numerous and careful limiting instructions, which we think cure any potential prejudice. *United States v. Perholtz*, 842 F.2d 343, 361, 268 U.S. App. D.C. 347 (D.C. Cir. 1988) ("[I]t is the law, pure and simple, that [HN9] jury instructions can sufficiently protect a defendant's interest in being free from undue prejudice." (quoting *United States v. Daniels*, 770 F.2d 1111, 1120, 248 U.S. App. D.C. 198 (D.C. Cir. 1985) (Starr, J., concurring))).

> 6 The evidence introduced to prove the indicted acts included the bank surveillance photos (one of which showed an Appellant pointing an automatic weapon at a boy and most of them showing Appellants brandishing automatic assault rifles), **[*14]** the firing of shots to intimidate bank employees, and the attempted killing of a police officer.

The district court did not abuse its discretion in admitting other acts evidence.

B

Appellant Burwell argues the government presented insufficient evidence to support his conviction under 18 U.S.C. § 924(c)(1)(B)(ii). [HN10] Section 924(c)(1)(A) provides for a mandatory consecutive sentence of at least five years for any person who uses or carries a firearm "during and in relation to" a crime of violence or for any person who possesses a firearm "in furtherance of a crime of violence. The mandatory minimum sentence skyrockets to thirty years, however, if the firearm involved was a machinegun. 18 U.S.C. § 924(c)(1)(B)(ii). A machinegun is defined as "a gun capable of firing automatically, that is, of firing several bullets with one pull of the trigger." *United States v. Harris*, 959 F.2d 246, 257, 294 U.S. App. D.C. 300 (D.C. Cir. 1992) (per curiam), *overruled on other grounds by*

**United States v. Bryan A. Burwell — Addendum — Page 6**

*United States v. Stewart, 246 F.3d 728, 730-32, 345 U.S. App. D.C. 384 (D.C.* Cir. 2001); 18 U.S.C. § 921(a)(23) (referencing 26 U.S.C. § 5845(b)).

Burwell's § 924 conviction arose out of his participation in the June 12, 2004 robbery of Industrial Bank. Because the gun he used [**\*15**] was a machinegun, Burwell received the thirty-year sentence, in addition to his other sentences. He asserts two arguments on appeal. First, Burwell contends the government presented insufficient evidence that he carried the AK-47 with two handles (the machinegun attributed to him) during the Industrial Bank robbery. Second, he argues that even if the government satisfied its burden of proof as to his weapon, the government failed to show he knew the gun was capable of firing automatically.

Burwell's first contention is an attempt to reargue the facts. Chtaini testified Burwell carried the two-handled AK-47 during the Industrial Bank robbery. Granted, this testimony arguably conflicts with that of the bank manager. The bank manager, who admittedly "did not know much about guns," (Tr: 4/21/05PM at 1916) testified that the man who asked her for the keys to the vault was carrying the two-handled AK-47, and Chtaini testified that it was he and Morrow who went to the vault area. If true, then Burwell could not have been carrying the AK-47 with two handles. Nonetheless, it is not our responsibility on appeal to resolve factual discrepancies. That task falls in the first instance to the jury. [**\*16**] *Green v. United States*, 289 F.2d 765, 766, 110 U.S. App. D.C. 99 (D.C. Cir. 1961) (per curiam) ("In our jurisprudence [HN11] the credibility of witnesses and the derivation of the truth from oral testimony are reposed in the hearer of the witnesses." (citation omitted)). Where, as here, it was entirely reasonable for the jury to have credited Chtaini's testimony over the bank manager's, that assessment is beyond reproach.

*See Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 561, 303 U.S. App. D.C. 1* (D.C. Cir. 1993) (explaining where the jury acts reasonably, "[r]esolving [factual] discrepancies . . . is quintessentially a matter for the jury"). Because Chtaini was intimately involved in the planning and execution of the robbery, the jury reasonably could have credited his testimony over the bank manager's, especially as the manager was under duress and observed the weapons only briefly in comparison to Chtaini.

Burwell's second argument fails on the law. We have squarely held that [HN12] a defendant need not know the weapon he is carrying is a machinegun for a § 924(c)(1) conviction to stand. *United States v. Harris*, 959 F.2d 246, 257-59, 294 U.S. App. D.C. 300 (D.C. Cir. 1992). In *United States v. Harris*, we considered whether the government must prove the defendant [**\*17**] knowingly possessed a machinegun to sustain convictions under § 924(c)(1) and 26 U.S.C. § 5861(d), which proscribes the receipt or possession of certain firearms, such as machineguns, that are improperly registered. We agreed that knowledge is a requirement for conviction under § 5861(d) because, without knowledge, that statute risked "criminaliz[ing] acts completely innocuous on their face [i.e. gun ownership] despite the actor's ignorance of the unknown facts that [make] his behavior illegal." *Id.* at 261. However, we refused to read a similar *mens rea* requirement into § 924(c). Because § 924(c) applies only to those individuals involved in the commission of violent crimes or drug trafficking, there is no risk the statute might ensnare individuals engaged in otherwise innocent conduct. *Id.* at 259. We held the government need only show "the defendant engaged in drug trafficking [or a crime of violence] and intentionally used firearms in the commission of [that crime]" to obtain a conviction under § 924(c). *Id.* at 258.

Burwell insists that *Harris* has been undermined by two subsequent Supreme Court

cases, *Staples v. United States*, 511 U.S. 600, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994) and *United States v. O'Brien*, 130 S. Ct. 2169, 176 L. Ed. 2d 979 (2010). **[\*18]** *Staples*, however, merely held that to obtain a conviction under § 5861(d), the government must prove the defendant knew the unregistered gun he possessed had the characteristics of a machinegun. 511 U.S. at 602. This is exactly the conclusion we reached in *Harris*; in fact, *Staples* cited *Harris* approvingly. *Id*. at 620. True, *Staples* explained that because "offenses that require no *mens rea* generally are disfavored, . . . some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of the crime." *Id*. at 606 (internal citation omitted). But we acknowledged this "presumption in favor of *mens rea*" in *Harris*. 959 F.3d at 258. We simply concluded that [HN13] with regard to § 924(c), Congress intended the *mens rea* requirement to attach only to the fact of firearm use, not to the fact the firearm had the characteristics of a machinegun. *Id*. at 258. This holding is entirely consistent with *Staples*, where the Court worried that reading § 5861(d) to dispense with the *mens rea* requirement would criminalize innocent activity. 511 U.S. at 614-15. Of course, this concern is nonexistent when the charges--like those brought under § 924(c)-- only apply to criminal **[\*19]** activity. *Harris*, 959 F.2d at 258-59; *see also United States v. Gilliam*, 167 F.3d 628, 638, 334 U.S. App. D.C. 391 (D.C. Cir. 1999) (concluding in no uncertain terms, "*Staples* does not extend a special *mens rea* requirement to § 924(c).").

Burwell also relies on the Court's recent decision in *United States v. O'Brien*, where the Supreme Court held that, [HN14] under § 924(c), the fact that the firearm the defendant possessed was a machinegun "[was] an element to be proved to the jury beyond a reasonable doubt," not a "sentencing factor" to be proved to the judge by a preponderance of the evidence at sentencing. 130 S. Ct. at 2172. Admittedly,

*Harris* is potentially inconsistent with *O'Brien* to the extent *Harris* referred to § 924(c)'s machinegun provision as a "sentence enhancement." *Harris*, 959 F.2d at 258. But in *Harris* we also described the "automatic firing capability of a weapon" as an "element of the crime." *Id*. at 259. Thus, it is unclear what impact *O'Brien* has on *Harris*. But even assuming *Harris* incorrectly characterized § 924(c)'s machinegun provision as an enhancement, that does not tell us whether the government must prove the defendant knew he was carrying a machinegun. On this point, Burwell is simply mistaken. **[\*20]** *O'Brien* does not require the government to prove beyond a reasonable doubt that "a defendant knew he was using or carrying a machine gun, as opposed to a semi-automatic firearm." Reply Br. at 36. The *O'Brien* Court expressly refrained from deciding whether "a defendant who uses, carries, or possesses a firearm must be aware of the weapon's characteristics." 130 S. Ct. at 2173. In the absence of an affirmative statement of the Court, we adhere to our precedent in holding that [HN15] conviction under § 924(c) does not require proof the defendant knew the weapon was a machinegun. *See Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 34, 353 U.S. App. D.C. 28 n.\* (D.C. Cir. 2002) ([HN16] "[A] panel is bound to abide by [circuit] precedent until it is overturned by the court sitting en banc or by the Supreme Court.").

Nor does *O'Brien's* characterization of the machinegun provision as an offense element trigger the "presumption in favor of *mens rea*." *Harris*, 959 F.2d at 258. This presumption applies with the most force to "statutory elements that criminalize otherwise innocent conduct." *United States v. X-Citement Video, Inc*., 513 U.S. 64, 72, 115 S. Ct. 464, 130 L. Ed. 2d 372 (1994). Unlike with § 5861(d), § 924(c) does not pose any danger of ensnaring **[\*21]** "an altar boy [who made] an innocent mistake." *Harris*, 959 F.2d at 259.

C

We have fully considered the rest of Appellants' arguments and find them to be without merit. Appellants' arguments contesting the admission of bias/cross-examination evidence, the denial of their severance motion, the exclusion of extrinsic evidence, the objections sustained during their closing arguments, the sufficiency of the evidence supporting their convictions, and the consecutive nature of their sentences are rejected.

III

For the reasons stated, the convictions and sentences are

*Affirmed.*